WOODRUFF COAL & IRON CO. v. COMMERCIAL COAL CO.

1. SALES—SALE BY SAMPLE—EVIDENCE—QUESTION FOR JURY.
   In an action for the purchase price of Creek coal, claimed by defendant to be worthless, where the testimony as to whether it was sold by sample was in sharp conflict, a sale by sample could not be implied, but was properly left to the jury to decide as a question of fact.

As to what constitutes a sale of goods by sample, see note in 70 L. R. A. 654.

2. TRIAL—SPECIAL QUESTION—SHOULD BE CONTROLLING ON MAIN ISSUE.

    The trial court properly refused to submit a special question to the jury under the provisions of 3 Comp. Laws 1915, § 12611, where it was not controlling on the main issue in the case.

3. SAME—ANALYSIS OF SAMPLE—EVIDENCE—ADMISSIBILITY.

    Where defendant's witnesses had testified that the coal sold was worthless and produced samples in court, it was not error for the trial court to allow plaintiff to take from said samples sufficient for an analysis by a competent chemist and receive his testimony that it contained a high heat unit content, in view of plaintiff's claim that it was valuable when used with other coal and with proper grates.

4. SAME—INSTRUCTIONS—SUPERCRITICAL OBJECTION.

    Where the court charged the jury that if they found the sale was a sale by sample, the coal delivered must be of the same character and quality as the sample, the charge was fair to the defendant, and its objection that he should have used the words "character, quality, kind and grade" is supercritical.

Error to Wayne; Tappan (Harvey), J., presiding. Submitted October 24, 1922. (Docket No. 35.) Decided December 5, 1922.

Assumpsit by the Woodruff Coal & Iron Company against the Commercial Coal Company for goods sold and delivered. Judgment for plaintiff. Defendant brings error. Affirmed.

*Welsh, Bebout & Kahn,* for appellant.

*Sibley, Armstrong & Mead,* for appellee.

FELLOWS, C. J. Plaintiff is located at Pittsburgh, Pennsylvania. It is a wholesale dealer in coal. We do not understand from the record that it is an operator. Defendant is located at Detroit. It is a wholesale and retail dealer in coal. In 1918 coal was a

scarce commodity in the market.    Defendant's secretary, Mr. Jones, visited Pittsburgh looking for coal to supply its customers.    While there he called at the office of plaintiff and there saw a box of "Creek coal" containing about a hundred pounds.    Creek coal is reclaimed anthracite which comes down the river from the washers and is taken out of the stream with grab-buckets from the bottom of the river.    It is dumped into a hopper, from there to a conveyor where it is washed and cleaned of impurities as far as could be.    It is used with bituminous coal largely for steam purposes.    It is not used ordinarily and may lie in the river for years.    Only in case of acute coal shortage is it reclaimed.    Mr. Jones took home with him some of this Creek coal in a cigar box and exhibited it to defendant's customers.    Five of them ordered a car each, and defendant ordered five cars of plaintiff.    They were shipped by it to defendant's customers.    The price was $2.25 per ton.    The coal proved unsatisfactory to defendant's customers and it declined to pay for it.    Up to this point there is no substantial disagreement in the testimony.

As the brief of defendant's counsel is bottomed almost entirely on the claim that the transaction here involved was a sale by sample and that the court should have so held as matter of law, it becomes of prime importance to determine whether that question was for the court or for the jury.    The determination of that question will determine numerous assignments of error.    We have stated in outline some of the undisputed facts.    We now take up some of the conflicting claims.    Mr. Jones testifies in substance that he knew nothing about Creek coal, that Mr. Woodruff, president of plaintiff, explained to him the way it was reclaimed, that he took the sample home for the purpose of showing defendant's customers, and he insists that it was a sale by sample.    If his testimony

was all there was in the case the court would doubtless have been justified in holding that the sale was a sale by sample. But Mr. Woodruff was sworn and his testimony was in sharp conflict with that given by Mr. Jones. He claims that he fully explained to Mr. Jones what Creek coal was, how it was reclaimed, and very thoroughly explained to him that it could not be burned with ordinary grates because of its fineness, that it would fall through before it would burn and that it should be used with bituminous coal; that Mr. Jones asked if he could take a sample and he told him he could, and—

"Mr. Jones looked over this dishful of coal; asked about the heat value of the coal. We had some specials of analysis that had been taken for customers of the Shamokin Valley, which we showed him, especially how they ran in volatile and ash and BTU, heat units of coal, and we told him at the time we didn't sell on analysis or didn't sell on sample. We never sell coal that way."

We shall not discuss the law applicable to sales by sample; a valuable note will be found in 70 L. R. A. 653. If Mr. Woodruff told Mr. Jones when he took the sample and had the conversation with him that they did not sell by sample, a sale by sample could not be implied. The testimony being in sharp conflict, as we have pointed out, the court very properly left to the jury the disputed question of fact as to whether the sale was a sale by sample or not.

Defendant's counsel asked to have the following special question submitted to the jury:

"Was the bulk of the coal shipped by the plaintiff to the defendant, or its customers equal to or like the sample furnished the defendant? Your answer will be 'Yes' or 'No.' "

In *Kosnicki* v. *Railway Co.*, 217 Mich. 245 (on rehearing page 251), having reference to the statute

permitting the submission of special questions to the jury (3 Comp. Laws 1915, § 12611), we said:

"In construing that statute it has been repeatedly held that the question must be so framed as to call for an answer which may be controlling on the main issue."

The controlling question in the instant case was whether the sale was a sale by sample or not. The special question in effect assumed that the sale was a sale by sample and asked for a "Yes" or "No" answer on a question not controlling. We think the trial judge properly refused to submit the special question to the jury.

Defendant produced numerous witnesses who testified that the coal shipped was worthless. Among them were defendant's customers who had purchased this coal from defendant. Some of them brought into court samples of the coal. Plaintiff's counsel asked permission, which was granted, that it be permitted to take from these samples sufficient for an analysis. The samples were analyzed by a competent chemist who testified to a rather high heat unit content. All this was done over defendant's objection. In view of the fact that defendant's witnesses had pronounced the coal worthless, and in view of the fact that plaintiff's testimony tended to show that it was valuable coal when used with other coal and with proper grates, we think this testimony and the proceedings were proper.

It is insisted that the court erred in charging the jury that if they found the sale was a sale by sample the coal delivered must be of the same character and quality as the sample. Defendant insists he should have used the words "character, quality, kind and grade." This objection is supercritical. The charge was a fair one to the defendant and fairly covered all the instructions it was entitled to. The case was

strictly one of fact on the controlling question and the verdict was not against the overwhelming weight of the evidence.

Assignments of error not specifically discussed have been examined and found to be without merit.

The judgment will be affirmed.

WIEST, MCDONALD, CLARK, BIRD, SHARPE, and STEERE, JJ., concurred. MOORE, J., did not sit.